Revised January 27, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-50481

_____


WALTER DEINES,

Plaintiff-Appellant,

versus

TEXAS DEPARTMENT OF PROTECTIVE AND
REGULATORY SERVICES,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Western District of Texas
_____

January 19, 1999

Before JOLLY, BARKSDALE, and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:


Walter Deines appeals the dismissal of his national origin discrimination claim brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. He challenges specifically the district court's jury charge regarding his burden of persuasion of proving pretext. We reemphasize the general rule that differences in qualifications between job candidates are generally not probative evidence of discrimination unless those differences are so favorable to the plaintiff that there can be no dispute

among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue. We therefore hold that the district court did not err in instructing the jury that disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as to virtually "jump off the page and slap you in the face."

I

On November 6, 1992, Walter Deines, a Hispanic, applied to the Texas Department of Protective and Regulatory Services ("DPRS"), for the position of Social Services Administrator III (Regional Director for the DPRS) in the Lubbock-Amarillo, Texas region. Deines was one of six applicants for the job. Deines advanced to the second phase of the application process, which included a personal interview with David Reilly, the DPRS hiring official. Reilly's duty was to determine which of the several applicants' qualifications most closely matched the DPRS's selection criteria. After Reilly interviewed Deines on December 4, 1992, Reilly concluded that Deines's qualifications exceeded the minimum qualifications required for the Lubbock position.

Next, on December 15, 1992, Reilly told Deines that the decision to select a new regional director for the Lubbock-Amarillo region had been delayed, but reassured him that no one had been

hired for the job. Reilly speculated that the position would be filled during the first week of January 1993.

Reilly ultimately determined that Deines was not the best applicant for the job. On February 8, 1993, Reilly filled the Lubbock opening with Mark William Dozier, a former DPRS employee who was the administrator of the Buckner Baptist Children's Home in Lubbock, Texas. When Dozier declined the position on February 11, 1993, Reilly immediately hired Colleen W. McCall on February 12, 1993. Deines, who was never offered the Lubbock position, took the view that he was more qualified than McCall and that the primary distinction between them was that McCall was a white, non-Hispanic.

Consequently, on February 26, 1996, Deines sued the DPRS under Title VII, alleging that the DPRS denied him employment as the Lubbock-Amarillo Regional Director solely because of his Hispanic national origin. The case went to trial on March 17, 1997, and the jury returned a verdict in favor of the DPRS on March 21, 1997. The jury concluded that Deines's Hispanic national origin was not the motivating factor in DPRS's decision not to hire him. The district court entered judgment in the case on May 16, 1997. Deines then lodged this appeal. He argues that the district court's jury instruction relating to pretext misstated the law by placing too heavy a burden on the plaintiff to prove the employer's reasons were pretextual.

II

The district court has broad discretion in formulating the jury charge, and we therefore review the instructions with deference. Gautreaux v. Scurlock Marine, Inc., 84 F.3d 776, 779 (5th Cir. 1996) (citations omitted), overruled on other grounds by 107 F.3d 331 (1997) (en banc). Accordingly, a challenge to jury instructions "must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." Mooney v. Aramco Services, Co., 54 F.3d 1207, 1216 (5th Cir. 1995). However, even erroneous jury instructions will not require reversal if based upon the entire record the challenged instruction could not have affected the outcome of the case. Id.

III

A

Deines's primary contention on appeal is that the district court erred in its instruction to the jury regarding his burden of persuasion in establishing pretext. Deines argues that the district court essentially elevated his burden of persuasion from the preponderance of the evidence standard to a level of clear and convincing evidence when it instructed the jury that:

> Also, you as a jury are not here simply to second guess the defendant's hiring decision as to which candidate was best qualified or best suited for the job. Therefore, disparities in qualifications are not enough in and of

4

themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face.

Relying on the sufficiency of the evidence standard as articulated in Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996)(en banc), Deines argues that to meet his burden of persuasion he only had to set forth pretext evidence "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Therefore, Deines concludes that evidence can be sufficient to create an inference of discrimination under Rhodes without "having to jump off the page and slap you in the face."

The DPRS responds that the district court did not err in giving the challenged instruction because the charge merely specifies the quality of evidence sufficient to create an inference of discrimination when the plaintiff is relying on better qualifications to prove intentional discrimination. The DPRS further contends that the jury charge is correct because it virtually follows the text of Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993).

Deines's argument that the district court's jury charge raised his burden of persuasion challenges clear and firmly established precedent of this court. In the context of the McDonnell Douglas burden-shifting analysis--specifically as it pertains to the

plaintiff's burden of establishing pretext by a preponderance of the evidence--we have time and again specified the point at which disparities in qualifications will allow a trier of fact to infer discrimination.  Most recently we explained:

> We have held that a plaintiff can take his case to a jury with evidence that he was clearly better qualified than [other] employees who were selected for the position at issue. . . .
> Moreover, in pursuing this inquiry, we recognize that the judicial system is not as well suited by training and experience to evaluate qualifications . . . in other disciplines as are those persons who have trained and worked for years in that field of endeavor for which the applications under consideration are being evaluated. Thus, *unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face*, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question.

Scott v. University of Mississippi, 148 F.3d 493, 508 (5th Cir. 1998)(emphasis added)(internal citations and quotations omitted). See also, EEOC v. Louisiana Office of Community Services, 47 F.3d 1438, 1445 (5th Cir. 1995); Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993).

We first note that the aforementioned standard is only one of many rules of evidentiary proof, developed to "progressively sharpe[n] the inquiry into the [ever] elusive factual question of intentional discrimination."  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993)(citing Texas Dept. of Community Affairs v.

6

<u>Burdine</u>, 450 U.S. 248, 255 n.8 (1981)). The phrase "jump off the page and slap [you] in the face" is simply a colloquial expression that we have utilized to bring some degree of understanding of the level of disparity in qualifications required to create an inference of intentional discrimination. In its essence, the phrase should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question. This evidentiary standard does not alter the plaintiff's evidentiary burden to prove the fact of intentional discrimination by a preponderance of the evidence. Instead, the standard only describes the character of this particular type of evidence that will be probative of that ultimate fact. <u>See</u> <u>Scott</u>, 148 F.3d at 508; <u>Odom</u>, 3 F.3d at 846-47.[1]

---

[1]In passing, we note that the jury charge provided that "[d]isparities in qualifications are not enough in and of themselves *to demonstrate* discriminatory intent. . . ." (Emphasis added.) The use of the word "demonstrate" may be misleading. Indeed, the instruction is erroneous to the extent that it suggests that disparities in qualifications in and of themselves can actually <u>demonstrate</u> or establish discriminatory intent as a conclusive fact. The more appropriate wording for the charge is that "disparities in qualifications are not enough in and of themselves *to create an inference* of discriminatory intent . . ." We therefore encourage district courts to phrase this instruction in these words.

Deines further argues, however, that the portion of the charge that instructed the jury that "[y]ou as a jury are not here simply to second guess the defendant's hiring decision as to which candidate was best qualified or best suited for the job" is in tension with <u>Hicks</u> and <u>Rhodes</u> because it precludes his showing that DPRS lied when it said that Ms. McCall was better qualified than he. Deines contends that if the jury cannot second-guess an employer's decision on qualifications, then the plaintiff cannot prove that the employer's reason for denying him the job, i.e., the other candidate was better qualified for the job, was mendacious and hence a pretext for intentional discrimination.

First, this argument misapprehends the extent of the jury's discrete inquiry in the context of employment discrimination suits. In Title VII cases, "we do not try in court the validity of [an employer's] good faith belief as to [one] employee's competence [in comparison to another.]" <u>Mayberry v. Vought Aircraft Co.</u>, 55 F.3d 1086, 1091 (5th Cir. 1995) (citations omitted). We have previously emphasized that "discrimination laws [are not] vehicles for judicial second-guessing of business decisions." <u>Walton v. Bisco Industries, Inc.</u>, 119 F.3d 368, 372 (5th Cir. 1997). <u>See</u> <u>also</u> <u>Scott</u>, 148 F.3d at 509; <u>Louisiana Office</u>, 47 F.3d at 1448; <u>Bodenheimer v. PPG Industries, Inc.</u>, 5 F.3d 955, 959 (5th Cir.

1993). Therefore, apart from searching for discriminatory intent, it is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position; nor is it the jury's task to weigh the respective qualifications of the applicants. Whether the employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide. The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination. Hicks, 509 U.S. at 511.

Second, Deines's argument does not take into account the instruction as a whole. The instruction fully explained the nature of the case, that the plaintiff's burden was to prove his case by a preponderance of the evidence, that the plaintiff need only prove that the plaintiff's national origin was a motivating factor in the employer's decision and that

. . . .

> . . . PLAINTIFF MAY DO THIS, FOR EXAMPLE, BY PRODUCING SUBSTANTIVE EVIDENCE THAT THE DEFENDANT'S STATED REASONS FOR NOT HIRING HIM WERE FALSE. THE EVIDENCE MAY, FOR EXAMPLE, STRONGLY INDICATE THAT THE DEFENDANT HAS INTRODUCED FABRICATED JUSTIFICATION FOR NOT HIRING PLAINTIFF, AND NOT OTHERWISE SUGGEST A CREDIBLE NONDISCRIMINATORY REASON.
>     ON THE OTHER HAND, THE MERE FACT THAT PLAINTIFF IS A HISPANIC AND WAS NOT HIRED IS NOT SUFFICIENT, IN AND OF ITSELF, TO ESTABLISH PLAINTIFF'S CLAIM UNDER THE LAW. ALSO YOU AS A JURY ARE NOT HERE SIMPLY TO SECOND GUESS THE DEFENDANT'S HIRING DECISION AS TO WHICH CANDIDATE WAS

BEST QUALIFIED OR BEST SUITED FOR THE JOB. THEREFORE, DISPARITIES IN QUALIFICATIONS ARE NOT ENOUGH IN AND OF THEMSELVES TO DEMONSTRATE DISCRIMINATORY INTENT UNLESS THOSE DISPARITIES ARE SO APPARENT AS VIRTUALLY TO JUMP OFF THE PAGE AND SLAP YOU IN THE FACE. . . .

Volume 1, Jury Charge, pp. 6-7.

The fallacy in Deines's argument is that he fails to acknowledge that even if he proved to the jury that the employer did not properly evaluate the qualifications of the respective candidates, and even if the jury concluded that Deines was the best qualified candidate, he still would not have proved his case. See Hicks, 509 U.S. at 524 ("that the employer's proffered reason is unpersuasive, or even obviously contrived does not necessarily establish that the plaintiff's proffered reason of [discrimination] is correct"). As our precedents have made clear, and as we have emphasized in this opinion, the employer's judgment as to qualifications will not be probative of the issue of a discriminatory motive unless the qualifications are so widely disparate that no reasonable employer would have made the same decision. It is hardly a basis for the jury to find mendacity on the part of the employer when its judgments on qualifications are somewhere within the realm of reason. There is then, for the purposes of proving pretext, a difference in simply "second-guessing" an employer's judgment and finding proof of mendacity.

10

Deines's argument, however, has attempted to blur this very important distinction and, accordingly, we must reject it.

IV

Because the challenged jury instructions are consistent with the principles we have noted in the opinion, we conclude that the district court did not err in instructing the jury. The judgment in favor of the DPRS is therefore

A F F I R M E D.

11