United States Court of Appeals
Fifth Circuit

**F I L E D**

November 18, 2003

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 03-50504
Summary Calendar

_____

BILLY R. EDWARDS,

Plaintiff-Appellant,

versus

ANTHONY PRINCIPI,
SECRETARY, DEPARTMENT OF
VETERANS AFFAIRS

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
(USDC No. W-02-CV-053)

_____

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant, Billy R. Edwards, ("Edwards") appeals the district court's grant of

Defendant-Appellee, Anthony J. Principi, Secretary, Department of Veterans Affairs' ("Veterans

Affairs") motion for summary judgment dismissing Edwards' employment discrimination claim, under

Title VII of the Civil Rights Act of 1964, which alleged Edwards was denied promotion because of

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

his race and/or sex.

DISCUSSION

I.    Statement of facts

Edwards, an African-American male employed at the Veterans Administration's ("VA") Central Texas Veterans Health Care System (CTVHCS), applied for a vacancy announcement posted for the position of Administrative Officer for the Physical Medicine & Rehabilitation Service ("PM&RS"). The position was graded at a GS-9[1] level, with a target level of GS-11, which meant that the position could have been filled by someone who was graded at either a GS-09 or GS-11 level. The duties and responsibilities of the position called for the Administrative Officer to participate with the supervisor or other managers in reviewing administrative needs of the PM&RS, to handle its budget, and to provide overall administrative and personnel management. All current CTVHCS employees who met the qualification requirements, which included a Master's or equivalent graduate degree or two full years of progressively higher level graduate experience, or a minimum of one year's specialized experience at the GS-07 level, were eligible to apply for the position. Edwards applied for the position, and by virtue of his Master's Degree, was found qualified for consideration at the GS-09 level.[2]   Edwards and six others candidates were selected to be interviewed for the position by a three-member panel that consisted of a white male, a white female, and an African-American female, all of whom served in supervisory capacities for the PM&RS. The panel's selection process involved a review of each candidate's application and an interview whereby the panel asked

---

[1] "GS" stands for General Schedule.

[2] Edwards' Master's Degree was credited as a substitute for two years' experience that candidates were required to possess.

2

each candidate identical questions in the same order. After each question was asked, each panel member independently scored the candidate's responses on a scale of one to five and afterwards all the scores were tabulated independently by each panel member to develop composite scores. Edwards ranked last after the process was completed. The candidate that the panel selected was a white woman who did not have the same level of education as Edwards but who, the panel concluded, had the practical experience in administrative support work, through her various secretarial and administrative positions with the VA, PM&RS and federal government, that the position required. All three panelists concluded that while Edwards was well educated, he did not possess the same experience that the other candidates had that specifically and directly related to the job they were interviewing for. All of the panelists noted that the candidate selected was able to vocalize her practical experience in administrative and budgeting matters. Edwards, by contrast, when asked about his practical experience in these same matters, could only refer to courses or books he had studied in graduate school.

## II.    Jurisdiction

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d) and 28 U.S.C. § 1291. In re Topco, Inc., 894 F.2d 727, 734 (5th Cir. 1990).

## III.    Standard of Review

This Court reviews a district court's grant of summary judgment de novo. See Am. States Ins. Co. v. Synod of the Russian Orthodox Church Outside of Russia, 335 F.3d 493 (5th Cir. 2003). Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c); See also Tango Transp. v. Healthcare Fin. Servs. LLC, 322 F.3d 888, 890 (5th Cir. 2003). A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. Id. Questions of law are reviewed de novo. Id.

IV.     Analysis

Title VII claims based on circumstantial evidence are analyzed under a three-part, burden-shifting framework set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792,  802 (1973).  Under this framework, a plaintiff carries the initial burden of establishing a prima facie case, and if successful, the burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the action taken.  Id.  If the defendant successfully proffers a legitimate, non-discriminatory rationale, then the burden shifts back to the plaintiff to show that the offered reason was not the real reason, but was put forth merely as a pretext for intentional discrimination, and that the actions taken were racially motivated . St. Mary's Honor Center v. Hicks, 509 U.S. 502, 512 (1993).  A plaintiff establishes a prima facie case of discrimination in non-promotion by showing that:  (1) he is a member of a protected class; (2) he sought and was qualified for the position to be filled; (3) he was rejected for the position; and (4) the position was given to someone else who was outside the protected class.  See  McDonnell Douglas Corp., 411 U.S. at 802; Haynes v. Pennzoil Co., 207 F.3d 296, 300 (5th Cir. 2000).

Veterans Affairs conceded that Edwards had established a prima facie case because he was a member of the protected group, was qualified for the position, was rejected, and someone outside the protected group was selected.  Veterans Affairs asserts, however, that it met its burden to rebut the prima facie case by showing an entirely non-discriminatory reason for not selecting Edwards for the position, that he was not perceived to be the most qualified candidate.  Once Veterans Affairs

4

offered a non-discriminatory reason for not selecting him, Edwards was required to show that such reason was not the real basis for his rejection, but was merely a pretext for discrimination.

In order to show that a proffered reason was merely a pretext, and defeat a summary judgment dismissal of a non-promotion discrimination case, this Court requires that a plaintiff show a difference in his qualifications superior to that of the person selected "so apparent as to virtually jump off the page and slap us in the face."  EEOC v. Louisiana Office of Community Services, 47 F.3d 1438, 1445 (5th Cir. 1995).  We have held that a plaintiff's subjective belief or unsubstantiated assertions of racial discrimination are insufficient to raise an inference of discrimination sufficient to defeat a summary judgment dismissal.  See Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 313 (5th Cir. 1999);  Grimes v. Texas Dept. of Mental Health at San Antonio, 102 F.3d 137, 140 (5th Cir. 1996).  It is not enough to defeat summary judgment dismissal that a plaintiff show that a trier of fact could find that he was just as qualified as the person selected to show an inference of discrimination.  Odom v. Frank, 3 F3d 839, 847 (5th Cir. 1993).   Rather, a plaintiff must show that a trier of fact could find that he was clearly better qualified than the person selected.  Id. Furthermore, this Court has held that in evaluating non-promotion discrimination cases it will not substitute its own views or judgment for those in an organization who have been charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question, unless the record shows that the plaintiff was clearly better qualified than the chosen candidate.  Id.

 The record shows that Edwards was qualified, through his level of education, for the position. However, because he lacked the type of experience that the panelists felt the position required, which the chosen candidate possessed, and nothing in the record rebuts this assessment, Edwards has failed to show that he was clearly the better qualified candidate.  Therefore, this Court should not substitute

5

its own judgment for that of the panelists, all of whom possessed multiple years of supervisory and administrative experience in their respective positions with the PM&RS, in deciding who was the best candidate for the position. Therefore, Edwards has not carried his burden of showing that the reasons offered for not selecting him for the position were nothing more than a pretext for discrimination.

Edwards also asserts that two of the panelists lied about the level of experience that the chosen candidate possessed thus establishing a pretext for not selecting him. More specifically, Edwards alleges that two of the panelists credited the chosen candidate with approximately thirteen years' specialized experience as a administrative or special assistant in the psychiatric department when in fact she had only approximately two and one half months of such experience.

This Court reviews a district court's factual determinations for clear error. Mathis v. Exxon Corp., 302 F.3d 448, 461-2 (5th Cir. 2002). The district court determined that Edwards misconstrued the statements made by the two panelists. The district court reviewed their statements and determined that they credited the chosen candidate with approximately thirteen years' total experience in the psychiatric department, and some experience as a special assistant. Neither of the two panelists stated that they knew precisely how much time the chosen candidate had been a special assistant, and did state that they thought she had either a long period of time or a number of years experience as such. However, they stated that they did know she had approximately thirteen years' experience in the psychiatric department and found that the chosen candidate was better able to orally communicate her educational and work experience than did Edwards.[3] Despite Edwards' plea to the

---

[3] The district court looked at the following statements made in deposition testimony which Edwards asserts shows that the two panelists lied about the chosen candidates level of experience:

    Panelist Glenda Pruner: So, she was – had a lot of knowledge with regards to the actual
       service as well as having been  -- had worked in the psychiatry department and had
       been – I'm not sure what her title was – the special assistant to the chief of psychiatry
       I think was her title or something similar to that, that she had done that for a long

contrary, the district court concluded that neither of the statements made by the two panelists, when viewed in conjunction with the entire record, expresses facts which are blatantly false. Our review of the record does not reveal that the district court clearly erred in determining that neither panelist stated a blatant falsehood about the chosen candidates' experience as a special assistant. The deposition testimony of the two panelists shows that the focus of their questions and evaluation centered on the selected candidate's level of practical experience in precisely the types of administrative and budgeting tasks the position would require. The record does not show that any mistaken or misstated assumptions concerning the selected candidate's precise position or title for

---

period of time.

Panelist Barbara Sanders:

Sanders: The selectee was based on . . . practical experience. . . . The person was able to vocalize their experience and exposure in all of the areas that we were asking. . . . And also as far as work experience, also with 13 years in psychiatry as an administrative assistant or as assistant chief was to the assistant – to special assistant to the chief of psychiatry, that gave us a basis for it. And then we asked questions pertinent to that. The person came with a lot of exposure, a lot of experience in the areas that we were looking for, someone that would be able to come in and work and hit the ground running.

Q: Did I hear you say that she had 13 years of experience in psychiatry as the AO [Administrative Officer]?

Sanders: No, no, no. I may have said that, but that's not as the AO. She had only been in psychiatry for I guess – I don't know how long to be honest that she had been as a special assistant to the chief of psychiatry service. That may have been an error on my part when I was reading off the sheet here.

Q: So the 13 years –

Sanders: In psychiatry service, she had worked.

Q: But she was a special assistant to?

Sanders: To the chief of psychiatry service, I know for the last few years. I don't know how many of those years – which that would probably be in her records someplace. And she was better able to orally communicate her experience, both educational and work experience.

7

any given length of time was the significant factor in the panelists' decision.   The record also shows that the panelists did rate Edwards high for his level of education experience, but that he was unable to show a sufficient level of  practical experience in his answers to questions regarding  the specific tasks that the position required.  Furthermore, we are unable to see from the record any evidence that would show that Edwards' non-promotion was based on any racial or sexist bias.  Thus, we are unable to conclude that the district court committed clear error in its factual determination that the panelists did not blatantly state falsehoods concerning the selected candidate's experience.

Finally, in his appellate brief Edwards brings up additional claims and  causes of action that he did not raise in either his complaint or as a defense to Veterans Affairs' summary judgment motion. He states that he is bringing his cause of action under 42 U.S.C. § 1981, in addition to Title VII, and he brings up a new Title VII claim on appeal, that the recruitment process itself, as opposed to the interview and selection process, was discriminatory.  This Court has held that it is improper for an opponent to a summary judgment motion to wait until trial or appeal to bring up new arguments or to develop claims or defenses to the summary judgment motion.  See e.g. C.F. Dahlberg & Co., Inc. v. Chevron U.S.A., Inc., 836 F.2d 915, 920 (5th Cir. 1988); Savers Fed. Savings & Loan Assoc. v. Reetz, 888 F.2d 1497, 1500 (5th Cir. 1989).  Unless there exist exceptional circumstances which would result in a miscarriage of justice, which we find to not be present here, questions not presented to the district court will not be considered on appeal.  C.F. Dahlberg & Co., Inc., 836 F.2d at 920 (citing D.H. Overmyer Co. v. Loflin, 440 F.2d 1213, 1215 (5th Cir.), cert. denied, 404 U.S. 851 (1971)).  We only look at factual evidence in the record at the time the court granted the motion for summary judgment.  C.F. Dahlberg & Co., Inc., 836 F.2d at 920 .  Therefore, we will not consider these additional claims or arguments on this appeal.

8

CONCLUSION

Because Veterans Affairs has shown a non-discriminatory reason for not selecting Edwards, and Edwards has failed to show that the proffered reason was merely a pretext for discrimination, we AFFIRM the decision of the district court granting Veterans Affairs' summary judgment motion to dismiss Edwards' non-promotion discrimination claim.